# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BLANCA FELIX, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CSAA GENERAL INSURANCE COMPANY, a Nevada Corporation; DOES I through X; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | Case No. 2:15-cv-02498-APG-NJK<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 21) |

This lawsuit arises from Blanca Felix's claim that CSAA General Insurance Company wrongly refused to pay her under an underinsured motorist ("UM") policy. Felix was injured while riding in a car insured by CSAA, and although she was paid $250,000 by the driver of the other car, she contends that her injuries warranted additional payments from CSAA's underinsured policy. Felix sues CSAA for breaching its policy, handling her claim in bad faith, and unfair claims practices under Nevada Revised Statute section 686A.310.

I previously denied CSAA's motion for summary judgment on Felix's claims of bad faith and unfair practices.[1] CSAA now moves for summary judgment on her breach of contract claim. The thrust of CSAA's argument is that Felix breached the UM policy by failing to cooperate with CSAA's investigation, and that that this breach relieves CSAA from its obligation to pay claims under the policy. But CSAA has proven merely that Felix delayed in responding to some of CSAA's requests; it has not shown that these delays constitute a breach of the policy. And even if it had, CSAA has not established that this sort of minor breach relieves it of having to pay under the policy. I thus deny CSAA's motion for summary judgment.

---

[1] ECF No. 28.

I. **ANALYSIS**

**A. Summary Judgment**

Summary judgment is appropriate when the pleadings, discovery responses, and other evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] When considering summary judgment, I view all facts and draw all inferences in the light most favorable to the non-moving party.[3]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[4] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[5] He "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[6]

**B. CSAA has not established as a matter of law that Felix breached the policy or that, even if she did, this breach precludes her from any recovery under the policy.**

CSAA argues that Felix breached the UM policy by failing to respond to CSAA's requests for records and authorizations within a reasonable time, and under the policy's language this precludes her from collecting under the policy now. CSAA relies on two of the policy's provisions: the cooperation provision and the lawsuit provision. The cooperation provision requires that Felix "cooperate with [CSAA] in the investigation, settlement or defense of any claim or lawsuit" and that she "authorize [CSAA] to obtain medical, employment, and other pertinent records and allow us to discuss, when appropriate, the injury or impairment with any

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (*citing* Fed. R. Civ. P. 56(c)).

[3] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[5] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citation omitted).

[6] *Bhan v. NME Hosps. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

medial provider or employer."[7] The lawsuit provision states that CSAA cannot "be sued unless there is full compliance with all terms of this policy."[8]

In Nevada, "contracts will be construed from the written language and enforced as written."[9] "Nevada law clearly enforces coverage conditions, and precludes coverage irrespective of whether there is any prejudice to the carrier."[10] "When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured has the burden of establishing that [he] complied with that term."[11]

CSAA has not established that Felix breached the cooperation provision. True, when CSAA asked Felix's counsel for records or authorizations, his response was often delayed by weeks or months.[12] But CSAA fails to point to any language in its policy that required Felix to provide these documents sooner. Unlike the policy's provisions relating to disclosures of legal documents—which requires the insured to "promptly send" records—there is no provision requiring Felix to submit medical documents or authorizations by any deadline.[13] Indeed, CSAA's requests to Felix did not include a deadline, which might have put her on notice that CSAA believed she was failing to cooperate in its investigation.[14] Instead, CSAA told Felix in a slew of form letters that "generally" it would not even evaluate her claim "until treatment

---

[7] ECF No. 22-2 at 5.

[8] *Id.* at 54.

[9] *Ellison v. California State Auto., Ass'n*, 797 P.2d 975, 977 (Nev. 1990).

[10] *Schwartz v. State Farm Mutual Auto. Ins. Co.*, 2009 WL 2197370, at 7 (D.Nev. July 23, 2009) (citations omitted).

[11] *Id.*

[12] *See, e.g.,* ECF Nos. 22-6; 22-7.

[13] ECF No. 22-2 at 6.

[14] *See, e.g.,* ECF No. 22-6. Each of CSAA's requests simply remind Felix that it needs her records; there is no mention of a certain date by which she must submit them. CSAA's initial letter to Felix's counsel, which states that CSAA should be given any documents related to a lawsuit "as soon as they are available," says nothing about a deadline for Felix to submit her medical records. ECF No. 22-4.

concluded,"[15] and that if she submitted documents sooner and notified CSAA that she was "ready to resolve" her claim, the insurer would "do its best" to evaluate it earlier.[16] CSAA's statements to Felix are not consistent with its current position that Felix was breaching the policy by not providing documents sooner. CSAA has thus not established that Felix breached the cooperation provision.

Setting aside delays, CSAA has not shown that Felix otherwise failed to cooperate with the insurer. Unlike the cases CSAA relies on, which primarily address insureds who flatly refuse to provide documents or authorizations,[17] the undisputed evidence shows that Felix eventually provided all of the documentation that CSAA asked for. Felix provided her medical records and authorizations.[18] She submitted to an independent medical examination at CSAA's request,[19] and she sent CSAA a letter from the physician that performed her surgery which explained the nature of her injuries.[20] I thus cannot conclude, based on this record, that Felix breached the cooperation provision.[21]

And even if Felix's delay in responding to CSAA constitutes a minor breach, CSAA has not shown that this breach completely relieves it of having to pay under the policy. Nevada courts have held that language in policies can create a condition precedent so that, if the insured

---

[15] *See, e.g.,* ECF No. 22-6.

[16] To the extent that CSAA is asking that I interpret the policy as imposing an affirmative duty on Felix to provide records or authorization within a certain time period, it has not provided any authority or analysis on that point.

[17] *See, e.g., Holland v. State Farm Mut. Auto. Ins. Co.,* 2014 WL 1268712, at *4 (D. Nev. Mar. 27, 2014).

[18] ECF No. 22-8;

[19] *See* ECF No. 20-15.

[20] ECF No. 16-4 at 6.

[21] ECF No. 20-12 at 2. Although CSAA suggests that Felix was uncooperative throughout the claims handling process, its evidence shows that Felix frequently replied to its requests. *See* ECF No. 20-8 (showing the various dates of Felix's communications).

breaches, the insurer is absolved of liability under the policy.[22] But looking to the specific language in CSAA's policy, it says that Felix must be in "full compliance" with the policy before filing a lawsuit.[23] CSAA fails to explain how Felix was not in full compliance on the day she filed suit.[24] Prior to filing, Felix had given CSAA her medical authorization, her medical records, and submitted to an independent examination at CSAA's request. CSAA does not identify any other way that Felix breached the policy or otherwise remained out of compliance with the policy.

None of this is to say that CSAA cannot defend against Felix's claims by alleging she breached the policy. But CSAA has not established as a matter of law that it is absolved of all liability in this case. I therefore must deny CSAA's motion for summary judgment on Felix's breach of contract claim.

## III. CONCLUSION

IT IS THEREFORE ORDERED that the defendant's motion for partial summary judgment **(ECF No. 21) is DENIED**.

DATED this 23rd day of May, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[22] *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2197370, at *3 (D. Nev. July 23, 2009).

[23] ECF No. 22-2 at 54.

[24] Nevada law also suggests that insurers should not be obligated to pay out under a policy when an insured's acts substantially prejudice the insurer's investigation. *Holland v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1268712, at *4 (D. Nev. Mar. 27, 2014). But CSAA does not explain specifically how it was prejudiced by Felix's delays in sending medical records or authorizations.